**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                             :
**DARREN McINTYRE,**                         :
                                             :
                    **Plaintiff,**           :
                                             :
         v.                                  :        **Civil Action No. 11-1520 (RMC)**
                                             :
**ISAAC FULWOOD,** *et al.*,                 :
                                             :
                    **Defendants.**          :
_____:

**OPINION**

This matter is before the Court on Defendants' motion to dismiss.  For the reasons discussed below, the motion will be granted.

**I.  BACKGROUND**

Plaintiff is "a prisoner of the District of Columbia, in the custody of the Federal Bureau of Prisons."  Compl. [Dkt. 1] at 2.  He is serving a 30-year sentence imposed by the Superior Court of the District of Columbia on February 12, 1999, upon his conviction for aggravated assault.  *Id.* at 3.  The sentence runs "consecutive[ly] to a 1996 non-parolable federal sentence of fifty-seven months for unlawful possession of a firearm by a convicted felon."  *Id.*

In anticipation of Plaintiff's parole eligibility date of January 1, 2010, on October 28, 2009, Scott Kubic ("Kubic"), a hearing examiner of the United States Parole Commission ("Commission"), conducted the initial parole hearing.  *Id.*  Kubic continued the hearing "due to his concerns about [Plaintiff's] involvement regarding a charge of conspiracy to commit

murder." *Id.* Kubic's experience led him to believe "that, often times, offenders agree to plead guilty to lesser included offenses to minimize the length of their sentence[s], and not necessarily because they were not involved in more serious conduct." *Id.* at 3-4. Kubic obtained "a copy of the Police Report and Grand Jury Indictment," *id.* at 4, and based on this additional information, Kubic concluded that "a new hearing [was] necessary to allow [Plaintiff] the opportunity to respond to the information" in those documents." *Id.*

"The indictment indicate[d] that between March 20, 1995 and December 13, 1995, members of the Stanton Terrace Crew, including [Plaintiff], conspired to murder members of the Parkland Crew, who were viewed as competitor crack cocaine dealers, in order to seek revenge for the killing of a former member of the Stanton Terrace Crew." *McIntyre v. Ebbert*, No. 3:10cv1739, 2011 WL 839544, at *1 (M.D. Pa. Mar. 7, 2011). Plaintiff "was indicted on twelve counts and subsequently pled guilty to three counts of Aggravated Assault." *Id.* The assault charges arose from an attempt by members of the Stanton Terrace Crew to murder an associate of the Parkland Crew, but the perpetrators only managed to shoot and wound three bystanders --- two women and a child. *Id.* Kubic's concern apparently arose because of Plaintiff's supposed participation in or responsibility for the March 13, 1995 murder of William Zimmerman and the May 14, 1995 murder of Michael Thompson by members of the Stanton Terrace Crew. *See id.*

Another hearing examiner, Joseph Pacholski ("Pacholski"), conducted a second hearing on January 28, 2010. *Id.* According to Pacholski, during the hearing Plaintiff "admitted [that] he was present for the two murders alleged in the indictment, and for the shooting of two women and a child." *Id.* Although Plaintiff "submitted a document indicating that . . . the government [did not] allege that [Plaintiff] was present at the time of the murders," *id.*, Ex.

2

(Hearing Summary dated Jan. 28, 2010) ("Hearing Summary") at 2, Pacholski made his decision

based on Plaintiff's "own admission of being present at the time of the shooting of the child and

the two women."[1]  Hearing Summary at 3.[2]  He recommended "[a] decision above the

guidelines," referring to the 1987 parole regulations of the former District of Columbia Board of

Parole ("1987 Regulations"), for the following reasons:

> Because the instant offense involved unusual cruelty to the victim
> in that you were present and fired a weapon where there were
> women and a child.  You also were a member of a crew who
> committed Murder.  Additional time is needed for programming in
> that you need to participate and complete the Victim Impact Group
> in order to remain crime free in the community.

*Id*. at 3.

Executive Reviewer S. Husk ("Husk") concurred with the decision to deny

Plaintiff parole, and to support his finding that Plaintiff's behavior "involved exceptional cruelty

to the victims and reflects ongoing criminal behavior," *id*. 4, he described Plaintiff's criminal

history and his current offenses of conviction as follows:

> [Plaintiff] has been serving the current sentence since 2/21/2000
> but has been in continuous custody since 12/13/95.  He served first
> a 57 month federal sentence for Possession of a Firearm by a
> Convicted Felon.  The federal charge resulted from a search of
> [Plaintiff's] apartment on 12/13/95.  During that search, a sawed-

---

[1] Plaintiff attached an excerpt of the transcript of his sentencing hearing, during which the prosecutor stated:

> [Plaintiff] was charged under a liability with two of the murders that actually took
> place, but the Government was not going to allege and does not allege that [he]
> was present at the time of these murders.

Compl., Ex. (Sentencing Transcript) at 13:20-24.

[2] According to the Hearing Summary, Plaintiff "stated that he did not fire at the females or the 4 year old child but he was firing his weapon at individuals in a different direction than the woman and child."  Hearing Summary at 1.

off shotgun was recovered.   .  .  . [A]lso recovered from the apartment was a handwritten diary which described shootings and armed robberies in which the shotgun was used.  Also recovered was a videotape from January of 1994 in which [Plaintiff] was seen . . . demonstrating how to use a sawed-off shotgun and a semi-automatic pistol and his four year old son was mimicking him handling guns and crack cocaine . . . .

The Superior Court case for which he is being considered for parole involved a shooting that occurred on 5/11/95.  There were at least three victims to the shooting including two women and a four year old child.  It does not appear that these three persons were the intended victims.  Instead, the intended victim was . . . an associate with the Parkland Crew.  [The victim] was shot at but there is no evidence that any of the bullets struck him on 5/11/95.

The 5/11/95 shooting was the result of an ongoing conspiracy of the Stanton Terrace Crew, of which [Plaintiff] was a member, to murder members of the Parkland Crew in order to eliminate them as competitors in the sale of crack cocaine.  Also, revenge was sought for the 3/20/95 murder of a member of the Stanton Terrace Crew.

Initially, [Plaintiff] was charged with counts that included the deaths of William Zimmerman on 5/13/95 and Michael Thompson on 5/14/95.  However, it appears that he pled guilty only to the events related to the 5/11/95 shooting.

*Id*. at 3.  Of particular note was Plaintiff's alleged "admi[ssion] to being present during two other shootings" on May 13, 1995 and May 14, 1995, "that resulted in the death of the victims.  Those murders were also carried out in furtherance of the illegal activity of the Stanton Street Crew." *Id.* at 4.  From these and other factors, Husk concluded "that the instant offense involved exceptional cruelty to the victims and reflects ongoing criminal behavior."  *Id.*

Citing, among other things, Plaintiff's "presen[ce] when two other men were murdered in furtherance of the illegal activities of the Stanton Street Crew," the Commission denied Plaintiff parole.  Compl., Ex. (Notice of Action dated Mar. 13, 2010) at 1.  Rather than setting a rehearing date within 12 months as the 1987 Regulations would have allowed, the Commission made an upward departure, continuing the matter "for a reconsideration hearing in

4

January 2013 after service of 36 months from [Plaintiff's] parole eligibility date of January 1, 2010." Notice of Action dated Mar. 13, 2010 at 1. Plaintiff's "request[] that the Commission reopen his case" was denied. Compl. at 6.

On August 19, 2010, Plaintiff filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania, *id.*, "challenging the Commission's departure from the [1987 Regulations] for District of Columbia offenders." *McIntyre*, 2011 WL 839544, at *3. That court reviewed "an audio recording of [Plaintiff's] January 28, 2010 remand hearing before Hearing Examiner Pacholski," *id.* at *3, and concluded that there was "no rational basis for the Commission's departure from [1987 Regulations]" because "the recording flatly contradicts Pacholski's indication that [Plaintiff] admitted his presence at the two murders in question," *id.* at *6. The court granted Plaintiff's habeas petition and remanded the matter to the Commission "for further appropriate consideration in light of the fact that record supports no finding that the petitioner was present at either murder." Compl., Ex. (Order, *McIntyre v. Ebbert*, No. 3:20cv1739 (M.D. Pa. Mar. 7, 2011)).

On remand, the Commission "determined that there is insufficient evidence to conclude that [Plaintiff was] involved in [the] murders" committed on May 13, 1995 and May 14, 1995, but again denied parole for the following reasons:

> The current sentence resulted from your conviction on three counts of aggravated assault that occurred on May 11, 1995. In this shooting, you were one of several individuals that planned to retaliate against a rival crew member and proceeded to fire shots toward persons that were standing outside of an apartment building. The shots struck three individuals, including a 4 year old child but missed the intended target. The Commission concludes that your criminal activity was not limited to this one incident but the conduct was indicative of your commitment to violent acts in furtherance of your criminal lifestyle. Your commitment to crime

> is evidenced by the fact that, for nearly three years prior to the offense, you were a member of the Stanton Street Crew that was involved in drug trafficking activities in the Southeast section of the District of Columbia. You possessed weapons during that time frame as evidenced by a videotape from January of 1994 . . . in which you were demonstrating how to use a sawed off shotgun. You continued to possess weapons and engage in drug trafficking activities up until the May 11, 1995 shooting but also thereafter. At the time of your arrest in December of 1995, a sawed-off shotgun was recovered from your residence as was evidence of your continued drug trafficking activities . . . and a diary describing several violent crimes. Though you were involved in only one shooting, the Commission finds that you were involved in ongoing criminal behavior in the community, possessed weapons in furtherance of that criminal behavior and were committed to engage in violent acts if necessary to support that lifestyle. Thus, the Commission concludes that you remain a risk to the community.

Compl., Ex. (Notice of Action dated Apr. 14, 2011) at 1.

Plaintiff claims that Defendants have violated his rights to due process and equal protection, arguing that he was denied a fair and impartial parole hearing. *See* Compl. at 14-15, 31. The Commission's decision to deny parole was based on "[t]he deliberate fabrication of the record," he alleges, notwithstanding Plaintiff's evidence that he was not present at the murders. *Id.* at 25. In addition, he claims that Defendants failed to maintain Commission records with the requisite level of accuracy, and that they relied on erroneous information in the records resulting in a decision adverse to Plaintiff, that is, denial of parole. *See id.* at 26-27, 29. He brings this action under 42 U.S.C. § 1983 against Isaac Fulwood ("Fulwood"), Chair of the Commission, and hearing examiners Kubic, Pacholski and Husk in both their official and individual capacities, and under the Privacy Act, *see* 5 U.S.C. § 552a, against the Commission. *See* Compl. at 2-3. He demands a declaratory judgment, nominal and punitive damages, and injunctive relief. *See id.* at 34-35.

6

## II.  ANALYSIS

### A.  Res Judicata (Claim Preclusion)

Defendants move to dismiss on the ground that Plaintiff's claims are barred under the doctrine of res judicata. [3] "[U]nder res judicata, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised* in that action.'"  *Drake v. FAA*, 291 F.3d 59, 66 (D.D.C. 2002) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (emphasis added)); *see I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 947 (D.C. Cir. 1983).  The Court applies a three-part test to determine whether res judicata applies:

> (1) whether the claim was adjudicated finally in the first action; (2) whether the present claim is the same as the claim which was raised or which might have been raised in the prior proceeding; and (3) whether the party against whom the plea is asserted was a party or in privity with a party in the prior case.

*Youngin's Auto Body v. Dist. of Columbia,* 711 F. Supp. 2d 72, 78 (D.D.C. 2010) (quoting *Patton v. Klein,* 746 A.2d 866, 869-70 (D.C. 1999)).

"A judgment on the merits is one that reaches and determines the real or substantial grounds of action or defense as distinguished from matters of practice, procedure, jurisdiction or form."  *Sheppard v. Dist. of Columbia*, 791 F. Supp. 2d 1, 5 (D.D.C. 2011) (internal quotation marks and citation omitted).   Two cases "implicate the same cause of action [if] they share the same 'nucleus of facts.'"  *Drake*, 291 F.3d at 66 (quoting *Page v. United*

---

[3] For purposes of this Opinion, the Court presumes, without deciding, that service of process has been effected properly on Fulwood, Kubic, Pacholski and Husk, and that the Court may exercise personal jurisdiction over them.  The Court therefore declines to address Defendants' arguments for dismissal of the complaint under Rule 12(b)(2) for lack of personal jurisdiction, under Rule 12(b)(4) for insufficient process, or under Rule 12(b)(5) for insufficient service of process.

*States*, 729 F.2d 818, 820 (D.C. Cir. 1984)).  To determine whether two cases share the same

nucleus of facts, the Court considers "whether the facts are related in time, space, origin, or

motivation[;] whether they form a convenient trial unit[;] and whether their treatment as a unit

conforms to the parties' expectations or business understanding or usage."  *Stanton v. Dist. of*

*Columbia Court of Appeals,* 127 F.3d 72, 78 (D.C. Cir. 1997).  "A privy is one so identified in

interest with a party to the former litigation that he . . . represents precisely the same legal right

in respect to the subject matter of the case – in other words, a person who or entity that is in

privity with the party."  *Wilson v. Fulwood*, 772 F. Supp. 2d 246, 261 (D.D.C. 2011) (internal

quotation marks and citation omitted).

        Plaintiff brings due process and equal protection claims against Defendants

arising from the Commission's March 13, 2010 decision to deny parole based on Pacholski's

statement – later proved wrong – that during the reconsideration hearing Plaintiff admitted his

presence at the murders committed on May 13, 1995 and May 14, 1995.  These constitutional

claims arise from the same nucleus of facts as did the claims before the Middle District of

Pennsylvania on its consideration of Plaintiff's prior habeas petition.  The petition was decided

in Plaintiff's favor by a court of competent jurisdiction.  Although the respondent to the habeas

petition is not named a defendant to this civil action, he is considered in privity with Defendants

in this action.  *See Wilson*, 772 F. Supp. 2d at 261 ("The government, its officers, and its

agencies are regarded as being in privity for claim-preclusive purposes.").  And

"preclusive effect may be had from claims and issues litigated in a habeas case to those in a §

1983 case." *Id.* at 262; *Christian v. McHugh*, 847 F. Supp. 2d 68, 74-75 (D.D.C. 2012) (holding

that district court rulings in prior habeas actions challenging court martial from the U.S. Army

precluded subsequent civil action challenging authorized punishment imposed under Uniform Code of Military Justice).

Plaintiff responds that the claims presented in this action differ from those raised in his habeas petition because this case "is directed specifically at the named individuals in both their official and individual capacities for their participation and wrongful actions against Plaintiffs' [sic] right[s] as provided under the [C]onstitution." Pl.'s Opp'n [Dkt. 21] at 3. He cannot avoid the preclusive effect of the habeas ruling simply by naming new parties, particularly where these Defendants and the respondent to the habeas petition all are federal government officials. *See Sunshine Anthracite Coal v. Adkins,* 310 U.S. 381, 402-03 (1940) ("There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government."); *Warren v. McCall*, 709 F.2d 1183, 1184-85 (7th Cir. 1983) (finding that Parole Commission officers were in privity with warden for purposes of res judicata). Nor can Plaintiff exploit the fact that his habeas petition was filed under a different federal statute, *see* 28 U.S.C. § 2241, than the statute under which he proceeds in this case, *see* 42 U.S.C. § 1983. The doctrine precludes relitigation not only of claims that already have been brought but also which could have been brought in the prior action, "even if [Plaintiff] chose not to exploit that opportunity." *Hardison v. Alexander,* 655 F.2d 1281, 1288 (D.C. Cir. 1981). Plaintiff alleges no new facts, and instead simply raises a new legal theory. "This is precisely what is barred by *res judicata.*" *Apotex, Inc. v. FDA*, 393 F.3d 210, 217-18 (D.C. Cir. 2004).

The Court concludes that Plaintiff's claims arise from the same nucleus of facts as did the claims presented in his habeas action in the Middle District of Pennsylvania. The final judgment on the merits of the habeas petition precludes this § 1983 action.

## B. Immunity

Defendants are amenable to suit under § 1983 in both their individual capacities, *see Fletcher v. District of Columbia,* 370 F.3d 1223, 1227 (D.C. Cir. 2004), *vacated in part on other grounds,* 391 F.3d 250 (D.C. Cir. 2004), and in their official capacities insofar as Plaintiff demands prospective declaratory and injunctive relief. *See Sellmon v. Reilly*, 551 F. Supp. 2d 66, 83 & n.12 (D.D.C. 2008).[4] Defendants move to dismiss on the ground that they are absolutely immune from suit.

"Courts have extended absolute immunity to a wide range of persons playing a role in the judicial process." *Wagshal v. Foster*, 28 F.3d 1249, 1252 (D.C. Cir. 1994) (collecting cases). The decision to grant this "quasi-judicial immunity" depends on three factors:

> (1) whether the functions of the official in question are comparable to those of a judge; (2) whether the nature of the controversy is intense enough that future harassment or intimidation by litigants is a realistic prospect; and (3) whether the system contains safeguards which are adequate to justify dispensing with private damage suits to control unconstitutional conduct

*Id.* The functions of Commissioners and other Commission officials generally meet this test. *See, e.g., Anderson v. Reilly*, 691 F. Supp. 2d 89, 92 (D.D.C. 2010) (Commissioner and hearing examiner); *Mowatt v. U.S. Parole Comm'n*, 815 F. Supp. 2d 199, 206 (D.D.C. 2006) (case analyst); *Pate v. United States*, 277 F. Supp. 2d 1, 8 (D.D.C. 2003) (Chair of the former District

---

[4] Fulwood, Kubic, Pacholski and Husk in their official capacities are not subject to suit for money damages under § 1983. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005); *Mowatt v. U.S. Parole Comm'n*, 815 F. Supp. 2d 199, 205 (D.D.C. 2011).

of Columbia Parole Board); *Reynolds-El v. Husk*, 273 F. Supp. 2d 11, 13 (D.D.C. 2002) (case examiner).  The Court finds no reason to depart from these holdings, and finds that Defendants are protected by quasi-judicial immunity.

### C.  Privacy Act Claims

"The [Privacy] Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements."  *Doe v. Chao,* 540 U.S. 614, 618 (2004). Among other requirements, the Privacy Act directs:

> Each agency that maintains a system of records shall maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination.

5 U.S.C. § 552a(e)(5).  "Whenever any agency . . . fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual, . . . the individual may bring a civil action against the agency."  *Id.* § 552a(g)(1)(C).  If the Court "determines that the agency acted in a manner which was intentional or willful," it may award the individual "actual damages sustained by the individual as a result of the refusal or failure" and attorney fees and costs.  *Id.* § 552a(g)(4).

According to Plaintiff, Defendants' decision to depart from the 1987 Regulations occurred "without verification of all relevant factual evidence" and therefore "made an adverse

decision based on inaccurate information to the detriment of [Plaintiff's] request for release."
Compl. at 26.  He claims that Pacholski made a "personal attempt of falsifying the record," *id*. at
28, presumably by injecting as if it were a fact an admission that Plaintiff was present at the May
13, 1995 and May 14, 1995 murders.  *See* Pl.'s Opp'n at 3 (stating that the Commission made
"an advers[e] decision . . . based on inaccurate records . . . the Plaintiff proved to be false, by
entering documentation of [the prosecutor's statement] in open court . . . that the [C]omission
chose to ignore").  In this way, the Commission "acted in a manner which was intentional and
willful." Compl. at 26.  In other words, he contends that the Commission failed to maintain its
records with the requisite level of accuracy because it failed to verify Pacholski's so-called fact –
that Plaintiff was present at the May 13, 1995 and May 14, 1995 murders – and relied on this
"fact" when denying his parole application.  Plaintiff alleges that by ignoring the truth (that
Plaintiff did not admit that he was present at the murders), the Commission acted intentionally
and willfully and, therefore, Plaintiff insists he entitled to damages.[5]

       "Defendants do not dispute that they have some obligation to undertake efforts to
maintain accurate records."  Defs.' Mot. [Dkt. 18] at 21.  They argue that Plaintiff has not made
an adequate showing of an intentional or willful violation of the Privacy Act.  *Id.* at 22.  They
point to Plaintiff's failure to mention the factual error in his April 30, 2010 letter asking the
Commission to reopen his case.  *Id.*  The significance of this omission is unclear, particularly in
this case.  By then Plaintiff not only had denied his presence at the two murders but also had
produced an excerpt of the sentencing transcript to support his assertion.

---

[5] For purposes of this Opinion, the Court presumes that Plaintiff named as a defendant a federal
agency covered by the Privacy Act, *see* 5 U.S.C. § 551(1) (defining "agency" to mean "each
authority of the Government of the United States"), because no Privacy Act claim can be brought
against an individual government employee.  *See Martinez v. Bureau of Prisons*, 444 F.3d 620,
624 (D.C. Cir. 2006).

> To prevail on his claim for damages, Plaintiff must show:
>
> (1) he has been aggrieved by an adverse determination; (2) the Commission failed to maintain his records with the degree of accuracy necessary to assure fairness in the determination; (3) the Commission's reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) the Commission acted intentionally or willfully in failing to maintain accurate records.

*Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 657 (D.C. Cir. 1996) (citations omitted).  An intentional or willful act requires a showing that the Commission "acted without grounds for believing its actions were lawful or that it flagrantly disregarded the rights guaranteed under the Privacy Act."  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (internal quotation marks and citation omitted).

It cannot be said that Kubic obtained a copy of the police report and grand jury indictment and scheduled a new hearing without grounds for believing his actions were lawful. Offense behavior was relevant to the Commission's determination as to Plaintiff's suitability for release.  *See* 28 D.C.M.R. § 204.18 (1987) (directing consideration of "whether the current offense involved a felony in which the parole candidate caused, attempted to cause, or threatened to cause death of serious bodily injury to another individual," and "whether the current offense involved a felony in which the parole candidate used a dangerous weapon," among other pre-incarceration factors, to determine whether the candidate should be paroled); *cf. Griffin v. Ashcroft*, No. 02-5399, 2003 WL 22097940, at *1 (D.C. Cir. Sept. 3, 2003) ("Appellant offers no support . . . for the proposition that the BOP may never rely on evidence of crimes of which a prisoner was not convicted when making custody classification determinations.").  Nor can it be said that Pacholski acted unlawfully, even if his belief in Plaintiff's "admission" were wrong. The Commission is not "strictly liable for every affirmative or negligent action that might be said

to violate the Privacy Act's provisions." *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir.

1984).

> The Middle District of Pennsylvania noted:
>
> [U]ltimately, the Commission may determine that reasons other than the [Plaintiff's] presence at the murders compel departure from the guidelines -- such as [his] involvement in the May 11, 1995 shooting, his membership in a street crew, the artifacts of drug distribution found in his home, or the Petitioner's diary indicating his violence.  Had the Commission indicated in its statement of reasons that it would have departed from the guidelines for any or each of these other stated reasons, independent from the [Plaintiff's] presence at the murders, the court might have found that decision to have had a rational basis.

*McIntyre*, 2011 WL 839544, at *7.  Here, the Commission based its decision on remand on

substantially these same reasons:  Plaintiff's membership in the Stanton Street Crew which was

involved in drug trafficking activities; the offenses of conviction arising from the May 11, 1995

shootings of three unintended victims in the course of what the Commission characterized as a

planned act of retaliation against a rival crew; and other evidence of Plaintiff's "commitment to

violent acts in furtherance of [his] criminal lifestyle."  Compl., Ex. (Notice of Action dated Apr.

14, 2011) at 1.  "[T]he Commission ceased reliance on the erroneous information," Defs.' Mot.

at 22, and has articulated a rational basis for its decision to deny Plaintiff parole.

### III.  CONCLUSION

Plaintiff's claims are barred under the doctrine of res judicata and quasi-judicial

immunity, and he has failed to state a claim under the Privacy Act.  Accordingly, Defendants'

motion to dismiss [Dkt. 18] will be granted.  A memorializing Order accompanies this Opinion.

Date:  September 25, 2012                        /s/
                                   ROSEMARY M. COLLYER
                                   United States District Judge